## IN UNITED STATES DISTRICT COURT
## FOR NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **James May, individually and on behalf of Similarly situated employees,** | ) ) ) |
| **Plaintiff(s).** | ) ) |
| vs. | ) ) Case No. 21-cv-_____ |
| **Alabama Plumbing Contractor LLC and Brent Vacarella.** | ) ) ) ) |
| **Defendants.** | ) |

## COMPLAINT

### Jurisdiction and Venue

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 1332, 1343(k), 29 USCA § 206, 207, 216, et seq., 29 U.S.C. § 1132 and/or by the provisions of 28 USCA § 1337, relating to any civil action or proceeding arising under any Act of Congress regulating commerce.

2. This is a suit authorized and instituted pursuant to §§ 201- 219, et seq., as amended (29 USCA §§ 201-219) of the Fair Labor Standards Act (hereinafter "the FLSA" to recover unpaid wages, liquidated damages, attorney fees, pre-judgment interest, costs, expenses and all other damages that the Plaintiff and similarly situated employees are entitled to under the FLSA.

3. The Plaintiff, James May, (hereinafter "May" or "Plaintiff") files this suit on his individual behalf as well as a collective action on behalf of similarly situated employees. Of note, seven plaintiffs and two different practically identical lawsuits have been previously been filed by former employees against the two defendants.

4. The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights secured by the FLSA for injunctive and other compensatory relief.

5. The Plaintiff and similarly situated employees are covered under the FLSA and Defendant Alabama Plumbing Contractor LLC (hereinafter "APC") is an employer covered under the FLSA

        in that APC conducted and operated a business which engages in activities which constitute interstate commerce as it has been defined under well-established federal law for decades.

6. APC is an Alabama LLC which utilizes goods and products which were manufactured and/or distributed from other states, has contracted with vendors, contractors and/or companies from other states and/or has otherwise engaged in numerous activities which constitute interstate commerce, communicated with vendors and/or done business among and/or with companies, vendors, manufacturers outside of Alabama.

7. APC is a company which does commercial plumbing as a subcontractor and/or plumbing contractor for general contractors and/or companies in the state of Alabama and has its principal place of business in Shelby County, Alabama.

8. Defendant Brent Vacarella is one of the owners of APC exercise control over May and other employees.

9. Vacarella has sworn under oath that he made all decisions related to APC's non-payment of May and similarly situated employees and solely determined APC's policy which only paid its employees when they get to the APC jobsites.

10. Defendant Vacarella is an employer as defined under the FLSA.

11. Venue is proper in the United States Northern District Court of Alabama, Southern Division.

## Parties

12. Plaintiff James May is an adult citizen of the United States and a resident of Bibb County, Alabama.

13. The Defendant, Alabama Plumbing Contractor LLC (APC) is an Alabama Limited Liability Company that is a plumbing contractor.

14. Based upon the testimony of Brent Vacarella and other documents provided, Defendant Brent Vacarella is one of two owners along with his wife, Summer Vacarella.

15. At all times stated herein, Brent Vacarella has been and currently is involved in the day to day operations and management of APC and as such, is an "employer" as defined by the FLSA.

16. Defendant Brent Vacarella exercised control of the Plaintiff and similarly situated employees by and through APC's decisions regarding compliance with the FLSA, the Portal to Portal Act and failing and/or refusing to pay May and similarly situated employees minimum wage and/or overtime for being required to report to the Defendants' shop to get machines, equipment, parts and tools in the morning, hooking up trailers and unhooking the same, time spent putting gas in the company trucks, time spent picking up supplies from plumbing supply stores, their travel time outside of the allowed Birmingham commuting area, travel time from the Defendant's shop to and from jobsites and/or work performed in the morning and/or afternoon at the shop.

### Facts

17. At all relevant times herein, May and similarly situated employees, as defined by the FLSA, were employees for their employers APC and Brent Vacarella. (Hereinafter the "Defendants" when used collectively).

18. Plaintiff James May worked for the Defendants as a helper and plumber from approximately 2015 through June 2021.

19. May and similarly situated employees were classified as "non-exempt" employees pursuant to the FLSA and were paid by the hour.

20. At all relevant times herein up until December 2019, (with the exception of a very small number of employees that received special permission to drive to and from jobsites from their home and/or special permission to drive APC work trucks to and from their home), the Defendants had a strict policy that May and similarly situated employees were required to report to the shop in the morning by 6:30 am, received job assignments from Vacarella or supervisors, pick up equipment, tools, supplies and parts, to hitch up and unhitch trailers, load heavy equipment on to the trailers, gas up the company trucks and equipment, to pick up parts from the plumbing store and/or to pick up the company plumbing trucks from the shop located in Shelby County before driving to the job sites and were then required to return the trucks back to the shop at the end of the day.

21. Former employee Matthew Tackett, who settled his FLSA lawsuit with the Defendants, stated that Brent Vacarella told him they could not take the company trucks to and/or from their homes

for insurance purposes so unless Tackett and the other employees received special permission, they were required to drop the trucks off every day and to pick them up the next morning.

22. Mathew Tackett received permission in March 2019 to drive his truck from his home to the jobsites and then return to his home.

23. If extenuating and/or special circumstances existed due to May working really late or having to be at the jobsite really early the next day, there were exceptions to this policy/rule and May would be permitted to drive the company truck home for the night rather than taking the truck back to the shop.

24. However, this was the exception to the "general rule" and May and the vast majority of similarly situated employees were required to obtain the permission of the Defendants with the primary decision maker being Brent Vacarella on this issue.

25. The plumbing trucks contained all of Mays and similarly situated employees' tools and parts and the trucks were needed in order to do their job at various jobsites.

26. In addition to the "daily tools" that all of the employees needed, certain larger machines, equipment and tools that were needed for special projects were kept at the shop and May were required to hook up and unhook trailers, load equipment on to the trailers and then drive the company trucks with the trailers hauling equipment to and from the job sites.

27. May would also sometimes be required to stop by a plumbing store to pick up parts and other supplies needed for the jobs they were performing for the Defendants, purchase tools or supplies at Home Depot, Lowes, etc. and to stop and buy gas for the company trucks.

28. The Defendants failed and/or refused to pay for the time for May to report to the shop as required by Vacarella and APC, to receive his work assignments, get parts from the shop in the morning, hook up trailers to APC work trucks, load heavy equipment, to fill up the company work trucks with gas, pick up parts from the plumbing store and/or to drive from the shop to the plumbing supplier and/or jobsites in the morning and from the jobsites at the end of the day back to the shop.

29. Many of the jobs that May and similarly situated employees were required to drive to and/or from were located well outside of Shelby County where the Defendants shops were located and the general Birmingham area.

30. Many of the jobs were as far as Huntsville, Montgomery, Tuscaloosa, Decatur, Talladega, north Birmingham, etc. and May and similarly situated employees were required to report to the shop and then drive from the shop (or their homes on occasion when permission was obtained) to the jobsites and then return the company truck to the shop in the evening.

31. Vacarella has sworn under oath that he paid a one way bonus for travel time out of town but this is false according to the sworn testimony of six former employees.

32. May and similarly situated employees were not paid minimum wage and/or overtime for their travel time to and/or from the shop, receiving job assignments, loading up equipment and tools, hooking and unhooking trailers, loading heavy equipment on to trailers, putting gas in the work trucks, stopping by the supply store or for their work getting supplies from the shop in the morning before traveling to the jobsites and then being required by the Defendants to return the company trucks to the Defendants' shop at the end of the day.

33. May worked an additional 2 to 25 hours per week (depending on the location of the jobsite and his travel time and rush hour) driving the company work trucks to and/or from the Defendants' shop to and jobsites both within and outside Shelby County, the greater Birmingham area and Jefferson County, filling the work trucks with gas, getting parts at the shop needed for the job, hooking up trailers and hauling equipment, purchasing supplies from plumbing supply shops and/or driving to and from the plumbing supply store for which the Defendants failed and/or refused to pay minimum wage, their agreed upon hourly rate and/or overtime if the hours exceeded 40 hours per week.

34. Matthew Tackett filed a lawsuit on December 12, 2020 based on the same allegations set out herein.

35. Pending at this time is an identical lawsuit filed by former employees Blaine Simmons, Paul McAnally, Christopher Todd Clark, Daniel Simmons, Donnie Hoffman and Jason Kirby.

36. After Tackett filed the lawsuit, the Defendants' policy then changed and the employees were allowed to take their work trucks from their homes to and from the jobsites and return home OR the Defendants began to pay them for their time if they needed to report to the shop, pick up supplies, etc.

37. Defendants knew and/or should have known based on the Code of Federal Regulations, 11th Circuit case law and BLACK LETTER CRYSTAL CLEAR unambiguous opinions from the NLRB that employers are required to pay its employees when the employees were required to pick up and drop off their trucks at the beginning and end of the work day and were further were required to be paid for their time traveling to and/or from the shop and the jobsites, to be paid to report to the shop to get parts and supplies in the morning and/or to pick up supplies and parts from the plumbing supply store.

38. Defendant Vacarella has admitted under oath that he did not consult with an attorney, did not review any regulations and did not contact the NLRB to ascertain whether he was in compliance with the law.

**39.** The Defendants all had actual knowledge that the timesheets submitted by May and similarly situated employees did not include their travel time to and from the shop and jobsites or their time to get parts and supplies from the shop or the plumbing store OR the timesheets were altered and the time recorded was not entered into the weekly payroll program.

**40.** Defendant Brent Vacarella even told employees that they were not required to pay them for this time and told certain employees that APC was his company and he could do what he wanted to do. He sent and text and stated they only got paid when they got to the jobsite.

**41.** After Tackett filed his suit, Vacarella personally admitted to May and many other employees that he owed them money and promised to pay them even if he had to make payments.

**42.** Vacarella claimed he had insurance to pay them what they were owed but he did not have any such insurance.

### Count I: Fair Labor Standards Act Violations

43. May incorporate by reference the preceding allegations of this Complaint.

44. As detailed in the above statements of facts, May and similarly situated employees worked in excess of forty hours per week and were not paid overtime pursuant to the FLSA and/or were not paid minimum wage for being required to report to the Defendant's shop and for his travel time in the company trucks to and/or from the shop and jobsites in the company trucks and/or for traveling to remote distances in their own vehicles and/or company trucks which were outside the general commuting area of the Defendants' shop and not subject to the Portal to Portal Act commuting exceptions,.

45. The Defendants willfully failed and/or refused to pay May and similarly employees for their time when they were required to report to the shop in the morning to obtain parts and supplies and/or for going to the plumbing supply store to pick up parts and supplied needed to perform their jobs for the Defendants.

46. The Defendants willfully knew that May and similarly situated employees were not getting paid minimum wage, their agreed upon contractual amount and/or overtime for being required to report to the shop in the morning, for their time getting parts and supplies from the shop, for their time hooking up trailer and loading equipment, for being required to go to the plumbing supply store to purchase parts and supplies, for time spent purchasing gas for company trucks and equipment and/or for travel time in the company trucks to and/or from the Defendants' shop and jobsites.

47. The Defendants are liable under the FLSA to pay May and similarly situated employees for the agreed upon hourly rate and/or minimum wage and/or at the rate of 1.5 times the customary hourly rate for the hours that May and similarly situated employees worked in excess of 40 hours per week.

48. As set out above in the statement of facts, the Defendants had actual knowledge that APC was not paying May and similarly situated employees for their travel time to and/or from the shop and jobsites in company trucks and Defendants conduct in failing to pay May and similarly situated employees' wages was willful and May and similarly situated employees are due to be paid liquidated damages.

**Prayer for Relief**

WHEREFORE, PREMISES CONSIDERED, May and any similarly situated employees request this Court to assume jurisdiction of this matter and award May and similarly situated employees the following damages and relief:

A. Grant May and similarly situated employees an order requiring the Defendants to make May and similarly situated employees whole by granting any and all relief available under the FLSA, other federal and/or state law, whether specifically pled or not, and including, but not limited to: injunctive relief, appropriate declaratory relief, back pay, compensatory damages, liquidated damages, pre-judgment interest, damages, etc.

B. Grant May and similarly situated employees a permanent injunction enjoining the Defendants, their agents, successors, employees, attorneys and those acting in concert with Defendants from continuing to violate the FLSA;

C. Award May and similarly situated employees compensatory, consequential, liquidated, punitive damages and/or any other damages available under the FLSA for the Defendants' violations of the Act.

D. Award May and any similarly situated employees attorney's fees, costs and expenses; and

E. May, in his individual capacity and on behalf of similarly situated employees prays for such other, further or different relief as justice may require and/or which May and similarly situated employees are entitled to under either federal and/or state laws, whether specifically pled or not.

**PLAINTIFF DEMAND A TRIAL BY JURY**

/s/ Scott Harwell
Scott Harwell (HAR198)
Counsel for the Plaintiff

**OF COUNSEL:**
HARWELL LAW FIRM LLC
109 Foothills Parkway #112
Chelsea, AL 35043
(205) 999-1099
Scott@HarwellLaw.com